# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1883V
UNPUBLISHED

| | |
|---|---|
| FRANCES A. VACCARO,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: February 2, 2022<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Unreimbursable Expenses; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Wes Baker Allison*, Kahn Law Firm, LLP, Charleston, SC, for Petitioner.

*Rachelle Bishop*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On December 12, 2019, Frances A. Vaccaro filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered left shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 2, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$110,791.11**, **representing $110,000.00 for actual pain and suffering, and $791.11 for past unreimbursable expenses.**

## I.  Relevant Procedural History

On December 12, 2019, Petitioner filed Exhibits 1-10, containing medical records and affidavits, along with the petition (ECF No. 1). On December 18, 2019, Petitioner filed Exhibits 11-13 and a Statement of Completion (ECF Nos. 6-7). The initial status conference was held on March 2, 2020 (ECF No. 11).

On April 27, 2020, Respondent filed a status report indicating that Respondent's counsel[3] had reviewed the records and stating that the site of Petitioner's vaccination was not recorded on the vaccine administration record, and that her delay in seeking treatment compounded any uncertainty about the site of vaccine administration (ECF No. 12). Following a telephonic status conference, Petitioner was directed to file additional evidence (ECF No. 13).

On June 22, 2020 and July 6, 2020, Petitioner filed Exhibits 14-18 containing additional evidence and a Statement of Completion (ECF Nos. 14-16). On August 13, 2020, following another telephonic status conference, I provided my preliminary view that, based on a preponderance of the evidence, it appeared likely that the October 2, 2018 flu vaccine was administered in Petitioner's left deltoid (ECF No.18). I directed Petitioner to serve a demand on Respondent, and directed Respondent to file a status report by November 2, 2020 indicating how he intended to proceed in this case. *Id.*

On September 9, 2020, Petitioner filed a status report stating that she had served a demand on Respondent on September 8 (ECF No. 19). On November 2, 2020, Respondent filed a status report stating that he had not yet determined his position in this case (ECF No. 20).

On December 11, 2020, Petitioner filed a Motion for Ruling on the Record (ECF No. 23). Respondent filed a response on March 26, 2021 (ECF No. 26).

On July 19, 2021 I issued fact findings, determining based on a preponderance of the evidence it was more likely than not that Petitioner's October 2, 2018 flu vaccine was administered in Petitioner's left deltoid and the onset of her pain occurred within 48 hours (ECF No. 27). I directed Respondent to file either his Rule 4(c) Report or a status report indicating how he intended to proceed by August 25, 2021. *Id.*

---

[3] This review was done by prior counsel for Respondent.

2

On August 23, 2021, Respondent filed his Rule 4(c) Report conceding that Petitioner was entitled to compensation (ECF No. 29). I issued a ruling on entitlement in favor of Petitioner on August 24, 2021, and the parties commenced damages discussions (ECF No. 30). But the parties were unable to resolve damages themselves, so their disputed elements were briefed. Petitioner filed his damages brief ("Br.") on October 27, 2021 (ECF No. 37). Respondent responded ("Opp.") on November 24, 2021 (ECF No. 41). On December 17, 2021, the parties filed a joint status report confirming that they were amenable to an expedited hearing on motions day, and were available for this purpose on January 28, 2022 (ECF No. 43).

The Motions Day hearing occurred as scheduled, and this written decision memorializes my oral rulings issued at the conclusion of the hearing.[4]

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed.

---

[4] That ruling is set forth fully in the transcript from the hearing, which has not yet been filed in the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### III. Appropriate Compensation in this SIRVA Case

#### A. Pain and Suffering

There is no dispute about Petitioner's awareness of her injury, leaving only severity and duration to be considered. In determining an appropriate award, I have reviewed the complete record in this case, as well as prior awards. My determination is based on the specific circumstances of this case.

##### 1. Relevant Factual History

On October 2, 2018, Ms. Vaccaro received a flu shot in her left deltoid. Ex. 2 at 4; Ex. 18 at 1; Findings of Fact, issued July 19, 2021 (ECF No. 27). She has averred that the injection hurt as it was administered, and her arm and shoulder were sore afterward. Ex. 3 at ¶¶ 4-5. She assumed it was not serious, however, and would go away with time. *Id.* But rather than improving, the pain worsened by Thanksgiving. *Id.* at ¶ 6. Petitioner remained hopeful that it would improve and, due to the holiday season, did not pursue treatment at that time. *Id.* She called her primary care physician on December 27, 2018 due to her shoulder pain and a bad cold, and was given a January 3, 2019 appointment. *Id.* at ¶¶ 6-7.

On January 3, 2019, Petitioner was seen by her primary care physician, Dr. Mary Little. Ex. 6 at 302. Petitioner reported that she was experiencing pain in her left arm from the flu shot she received in October. *Id.* She reported that after the flu shot, her left arm was initially warm and puffy, but never bruised. *Id.* The record indicates that she was

advised to follow up with a phone call in one month. *Id.*

On January 18, 2019, Petitioner reported to orthopedist Dr. James Spearman complaining of left shoulder pain. Ex. 7 at 18-19. She reported that the pain began in October 2018 after her flu shot. *Id.* at 19. On examination of her left shoulder, she was found to have pain with internal and external rotation and decreased abduction. *Id.* Dr. Spearman assessed her with adhesive capsulitis and pain of the left shoulder. *Id.* He administered a subacromial steroid injection and recommended that Petitioner do home exercises and continue using ice and non-steroidal anti-inflammatory drugs as needed. *Id.* at 19-20.

Petitioner returned to the orthopedist two more times over the next few weeks, continuing to report pain ranging from 6-8 on a scale of 1-10. Ex. 7 at 12-17. She reported that she had seen no improvement from the steroid injection and was in constant pain. *Id.* at 17. Surgery was recommended, and Petitioner agreed to surgical intervention. *Id.*

On February 12, 2019, Dr. Spearman performed arthroscopic surgery on Petitioner's left shoulder. Ex. 7 at 42-43. Dr. Spearman reported that during surgery, he discovered extensive adhesions and scar tissue, confirming the diagnosis of adhesive capsulitis, tendonitis, and a torn labrum. Ex. 10 at 1.

On February 26, 2019, Petitioner underwent a physical therapy ("PT") evaluation of her left shoulder. Ex. 8 at 99-100. She presented with decreased range of motion ("ROM"), strength, flexibility, and mobility, as well as increased pain and edema. *Id.* Her deficits limited her ability to perform activities of daily living such as dressing, reaching overhead, sleeping, and grooming. *Id.* She reported that at rest her pain was 5-6 and during activity 8-9 out of 10. *Id.* On examination, her left shoulder passive ROM was 41 degrees in flexion and 35 degrees in abduction.[5] *Id.* Her active ROM was 35 degrees in flexion. *Id.*

Petitioner continued PT until May 21, 2019, attending 28 sessions. *See generally* Ex. 8. In March and April, her pain levels were 3-4 at rest and 5-6 during activity. *Id.* During this time she had significant gains in ROM, and on April 23, 2019 her active ROM was 123 degrees in flexion and 104 degrees in abduction. *Id.* at 90.

Petitioner was seen in her orthopedist's office five additional times between February 25 and May 20, 2019. Ex. 7 at 1-12. From February to April 2019, she reported pain levels ranging from 4-7 on a scale of 0-10. *Id.* at 4-12. At her final orthopedist

---

[5] Normal shoulder flexion for adults ranges from 165 to 180 and normal abduction for adults varies from about 170-180 degrees. Cynthia C. Norkin and D. Joyce White, MEASUREMENT OF JOINT MOTION: A GUIDE TO GONIOMETRY 72, 80 (F. A. Davis Co., 5th ed. 2016).

appointment on May 20, 2019, she reported that she was "using her left arm like she would normally and is having no issues. Very little to no pain." *Id.* at 2.

On May 21, 2019, Petitioner was discharged from PT. Ex. 8 at 85. The record noted that she had made objective improvements with ROM, joint mobility, strength, and edema. *Id.* She continued to present with impairments limiting her ability to dress herself and lift overhead. *Id.* She had demonstrated independence with her home exercise program and met most goals. *Id.* She reported pain levels of 0-1 on a scale of 0-10. *Id.* Her left shoulder continued to exhibit decreased active ROM compared to her right shoulder. *Id.* Her left shoulder active ROM was 128 degrees in flexion and 133 degrees in abduction. *Id.* The therapist observed that she had met the functional parts of her goals but not the objective portions, meaning that she had regained necessary function but her ROM measurements had not returned to normal. *Id.*

Petitioner has filed updated affidavits suggesting that she still suffers residual effects of her injury. Ex. 19 and 20 (supplemental affidavits of Petitioner and Anthony J. Vaccaro, filed Sept. 24, 2021). However, she has not filed additional medical records showing further treatment for her injury, and states that she has not sought formal treatment for her injury since her discharge from PT. Br. at 12.

### 2. Parties' Arguments

Ms. Vaccaro requests a pain and suffering award of $145,000. Br. at 1. In support, she cites a number of prior SIRVA decisions, including *Wilson*, *Collado*, and *Leslie*, in which the pain and suffering awards were $130,000, $120,000, and $125,000, respectively.[6]

Petitioner asserts that she has experienced the effects of her injury for over three years. Br. at 7. The pain was very intense for four and a half months, until her surgery. *Id.* After surgery, she asserts, she could barely use her left arm, and underwent PT from February 26 to May 21, 2019. Br. at 8. At discharge from PT, her condition had improved but not returned to normal. *Id.* To date, her injury limits her ability to reach behind her back or overhead with her left arm, and the pain wakes her up intermittently at night. *Id.* at 9. Petitioner asserts that her shoulder pain was not "acceptable" until the fall of 2019, a year after vaccination. *Id.*

Respondent argues that the pain and suffering award should be no more than

---

[6] *Wilson v. Sec'y of Health & Human Servs.*, No. 19-0035V, 2021 WL 1530731 (Fed. Cl. Spec. Mstr. Mar. 18, 2021); *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018); *Leslie v. Sec'y of Health & Human Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021).

$65,000.00. Opp. at 1. Respondent emphasizes Petitioner's three-month delay in seeking care after her vaccination. Opp. at 6. Respondent argues that Petitioner's "voluntary delay suggests that the pain was not significant enough to prompt sooner treatment." *Id.* (citing *Knauss* and *Marino*).[7] Respondent further maintains that Petitioner's surgery was a minimally invasive outpatient procedure, and that it significantly improved her injury. Opp. at 7.

Overall, Respondent characterizes Petitioner as enduring moderate pain for less than eight months. Opp. at 8. Respondent emphasizes prior decisions in *George*, *Knauss*, and *Dagen*, in which the pain and suffering awards were $67,000, $60,000, and $65,000, respectively.[8]

### 3. Analysis

Overall, and based on the record and parties' arguments, it is my conclusion that the pain and suffering award should not be as high as Petitioner proposes, nor as low as Respondent suggests. Rather, the appropriate "range" for the award is narrower.

There is objective, medical record evidence supporting a finding that Petitioner's symptoms continued for nearly eight months. Although she did not seek care until three months after vaccination, once she did so her treatment efforts continued for over four and a half months, including surgery, an unsuccessful cortisone injection, and three months of intensive PT. Thus, her delay in treatment does suggest a lack of immediate severity (and is a relevant consideration herein), but the *overall* course thereafter underscores that the injury was serious enough to warrant persistent medical attention.

The record is less supportive of the conclusion that Petitioner's injury remains as severe, however. While Petitioner asserts that her symptoms continue to this day, she has not sought medical attention for her injury in nearly three years, and at the time of discharge the medical record evidence reveals that she had regained function and reported experiencing little to no pain. I acknowledge, however, that her shoulder ROM remained objectively decreased at that time, and that supports Petitioner's affidavit evidence asserting that her symptoms did not end at discharge. While Petitioner required surgery and intensive PT, she had a good recovery.

---

[7] *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018); *Marino v. Sec'y of Health & Human Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018).

[8] *George v. Sec'y of Health & Human Servs.*, No. 18-0426V, 2020 WL 4692451 (Fed. Cl. Spec. Mstr. July 10, 2020); *Knauss*, 2018 WL 3432906; *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019).

Although I do find the comparable cases cited by Petitioner to be a bit high under the circumstances, Respondent's comparables are little better – for they involve less severe circumstances, and for the most part did not involve surgical intervention, which I view as significant.

Of the cases cited in the parties' briefs, I find *Collado* to be the most useful. That petitioner was awarded $120,000 for pain and suffering for an injury of comparable duration. The petitioner in *Collado* had slightly worse pain, but slightly less ROM restriction as well, and (like Ms. Vaccaro) underwent a cortisone injection and surgery, with a similarly good outcome. Petitioner in this case underwent more PT, but her three month delay in seeking care in this case (two and a half months longer than in *Collado*) is indicative of a less serious injury.

I find two additional cases to be useful benchmarks. The petitioner in *Knudson*[9] experienced an injury that was slightly shorter in duration but similar in severity. That individual sought care only **14 days** after vaccination and also underwent surgery, but did not have a cortisone injection and underwent less PT, and was awarded $110,000 for pain and suffering. Also instructive is *Cates*.[10] That petitioner's injury duration was slightly shorter than in this case, but the severity was similar, and both underwent surgery, one cortisone injection, and similar amounts of PT. The petitioner in *Cates* sought care only 11 days after vaccination, and was awarded $108,000 for pain and suffering.

Thus, taking all of the above into account, I award Petitioner **$110,000.00** for pain and suffering.

### B. Unreimbursable Expenses

The parties agree that Petitioner is entitled to $791.11 for past unreimbursable expenses, and I award this amount.

### IV.   Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $110,000.00 represents a fair and appropriate amount of**

---

[9] *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018).

[10] *Cates v. Sec'y of Health & Human Servs.*, No. 18-0277V, 2020 WL 3751072 (Fed. Cl. Spec. Mstr. June 5, 2020).

compensation for Petitioner's actual pain and suffering.[11] **I also find that Petitioner is entitled to $791.11 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $110,791.11 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[12]

**IT IS SO ORDERED.**

> s/Brian H. Corcoran
> Brian H. Corcoran
> Chief Special Master

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.